USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 8-28-18

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE PUERNER,<br>      **Plaintiff,**<br>-against-<br>HUDSON SPINE AND PAIN MEDICINE, P.C.,<br>      **Defendant.** | 17-cv-03590 (ALC)<br><br>**<u>OPINION AND ORDER</u>** |

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiff Michelle Puerner brings this action for a default judgment against Hudson Spine and Pain Medicine, P.C. ("HSPM") for violations of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("RA"), Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), New York Human Rights Law ("NYHRL"), and the New York City Human Rights Law ("NYCHRL"). For the reasons that follow, the motion is GRANTED.

## BACKGROUND

### I. Factual Background

  Puerner is a deaf woman who communicates primarily in American Sign Language ("ASL"). Complaint ¶ 1 (ECF No. 1) ("Compl"). HSPM is a public accommodation in New York City that receives federal assistance, including Medicare and/or Medicaid reimbursements. *Id.* ¶ 3.

  Plaintiff's doctor referred her to HSPM to receive treatment. *Id.* ¶ 7. Around March 28, 2016, she called HSPM using a Sorenson Video Relay Service ("VRS"). *Id.* ¶ 8. She set up an appointment for April 4, 2016 and requested that an ASL interpreter be provided at that time. *Id.*

¶ 9. However, HSPM's representative said that the company would not provide an ASL interpreter. *Id.* ¶ 10. Instead, Plaintiff would need to bring one and pay for it herself if she wanted such services. *Id.* Plaintiff informed the representative that requiring her to acquire and pay for the interpreter was discriminatory, and that it was HSPM's obligation to do so. *Id.* ¶ 11. The representative repeatedly refused, and eventually ended the call. *Id.* ¶ 12.

On March 31, 2016, Plaintiff again called HSPM using VRS to request an ASL interpreter for the upcoming appointment. *Id.* ¶¶ 13-14. Again, a representative repeatedly stated that HSPM would not provide an ASL interpreter under any circumstances. *Id.* ¶¶ 15-16. Plaintiff alleges that the HSPM representative's tone was "rude, dismissive, and disrespectful." *Id.* ¶ 17. The VRS interpreter explained to the representative that a blanket refusal to accommodate constituted unlawful discrimination. *Id.* ¶ 18. The representative hung up and ended the call. *Id.* ¶ 19.

On April 4, 2016, Plaintiff went to HSPM for her scheduled appointment. *Id.* ¶ 20. For a third time, she requested an ASL interpreter for the meeting. *Id.* ¶ 21. Yet again, HSPM staff denied her request. *Id.* Forty-five minutes later, upon realizing she would not be able to effectively communicate during the appointment, Plaintiff left. *Id.* ¶ 22.

Plaintiff contends that without the interpreter she was unable to fully and equally participate in her health care and treatment, and that as a result she received services that were objectively inferior to those that are routinely provided to hearing patients. *Id.* ¶¶ 23-25. She states that the discrimination she faces and expects she would face going forward have deterred her from seeking HSPM's services in the future. *Id.* ¶ 27. Further, she contends that she faced humiliation, fear, and emotional distress as a result of this discrimination. *Id.* ¶ 28.

**II.   Procedural Background**

Plaintiff filed the complaint commencing this action on May 12, 2017. ECF No. 1. Defendant's answer was due by June 8, 2017. *See* ECF No. 6. Defendant did not answer by that date.

On August 31, 2017, Plaintiff obtained a Clerk's Certificate of Default as to Defendant. ECF No. 11. On November 30, 2017, this Court issued an order to show cause by January 2, 2018 why the action should not be dismissed for failure to prosecute for failure to move for default judgment. ECF No. 12. On December 22, 2017, Plaintiff filed this motion for default judgment pursuant to Fed. R. Civ. P. 55. To date, Defendant has not answered or otherwise appeared in this action.

Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

"It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Vt. Teddy Bear Co., Inc. v. 1-800 Beagram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)). Nevertheless, a district court "need not agree that the alleged facts constitute a valid cause of action." *Id.* (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)) (internal quotation marks omitted). Rather, the Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Mickalis Pawn Shop*, 645 F.3d at 137 (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). In making this determination, the Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel*, 577 F.3d at 84 (citation omitted).

## DISCUSSION

### I. Standing

As an initial matter, the Court *sua sponte* addresses whether Plaintiff has standing to bring this action. *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised sua sponte."). Standing requires that the Plaintiff (1) "suffered an 'injury in fact'", (2) demonstrates a "causal connection between the injury and the conduct complained of", and (3) shows that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). A plaintiff "must have standing at the time a lawsuit is filed." *Disabled in Action of Met. N.Y. v. Trump Intern. Hotel & Tower*, No. 01-cv-5518, 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003) (collecting cases). Courts have held that plaintiffs satisfy these standing requirements if they allege that they "encountered barriers at [public accommodations] prior to filing their complaints" and "show a plausible intention or desire to return to the place but for the barriers to access." *Id.* (collecting cases).

Here, Plaintiff has satisfied the standing requirements. Plaintiff alleged a concrete injury—denial of access to equal services through refusal to provide an ASL interpreter. She has alleged that this injury is traceable to Defendant, whose staff denied her such services. Finally, she has plausibly alleged that she "would seek Defendant's services in the future, but she is deterred from doing so due to the discrimination she has faced and expects to face in the future." Compl. ¶ 28.

### II. ADA and Rehabilitation Act

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Similarly, Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. While "the RA does not ensure equal medical treatment," it "does require equal access to and equal participation in a patient's own treatment." *Loeffler v. Staten Isl. Univ. Hosp.*, 582 F.3d 286, 275 (2d Cir. 2009) (collecting cases).

Courts have noted that "[t]he Rehabilitation Act and the ADA 'impose identical requirements.'" *Johnson v. Levy*, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011) (quoting *Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1998)). Thus, "[t]o establish violation of Title III of ADA or the Rehabilitation Act a plaintiff must plead that: (1) he or she has a disability; (2) he or she was 'otherwise qualified' for the benefit that has been denied; (3) the defendants are subject to one of the acts, and (4) he or she was denied opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his or her disability." *Id.* (citation omitted).

Here, Plaintiff states a claim under the ADA and RA. First, "there is no dispute that Plaintiff [who is deaf] is a qualified individual with a disability." *Williams v. City of N.Y.*, 121 F. Supp. 3d 354, 364 (S.D.N.Y. 2015). Second, Plaintiff alleges that she was otherwise qualified for treatment by Defendant, as she had an appointment for treatment. Third, Plaintiff sufficiently

alleges that Defendant is a public accommodation subject to the Acts based on the fact that it receives federal assistance. *See* 45 C.F.R. §§ 84.3(f), (h). Finally, Plaintiff alleges that she suffered discrimination within the meaning of the ADA and RA. According to the complaint, Plaintiff repeatedly informed Defendant of her disability, requested an ASL interpreter, and was refused such services. As a result, she was denied the ability to "equally participate in her own health care." *See Loeffler*, 582 F.3d at 275.

### III. Section 1557 of the ACA

The ACA prohibits discrimination under, *inter alia*, Section 504 of the RA. 42 U.S.C. § 18116(a). Further, it states that "[t]he enforcement mechanisms provided for and available under . . . section 504 . . . shall apply for purpose of violations of this subsection." *Id.* Since Plaintiff states a claim under the RA, she also states a claim under the ACA.

### IV. NYHRL

The NYHRL is "construed coextensively with [Title III] and Section 504." *Viera v. City of N.Y.*, No. 15-cv-5430, 2017 WL 3130332, at *13 (S.D.N.Y. July 21, 2017) (citation omitted). Thus, for the same reasons adduced above Plaintiff states a claim under NYHRL.

### V. NYCHRL

NYCHRL claims "must be reviewed independently from and more liberally than their federal and state counterparts." *Id.* (citing *Loeffler*, 582 F.3d at 278). As the Circuit explained, "[t]here is now a one-way ratchet: Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall." *Loeffler*, 582 F.3d at 278 (citation and internal quotation marks omitted).

Since Plaintiff states a claim under the narrower state and federal standards, she certainly stats a claim under the broader city human rights law.

## VI. Damages

### A. Injunctive Relief

Plaintiff seeks injunctive relief for violations of the ADA and ACA. Title III of the ADA provides that

> injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2).

While addressing the scope of injunctive relief, the Circuit clarified that "[a] reasonable accommodation is one that gives the otherwise qualified plaintiff with disabilities meaningful access to the program or services sought." *Henrietta D. v. Bloomberg*, 331 F. 3d 261, 282 (2d Cir. 2003) (citation and internal quotation marks omitted). What constitutes "meaningful access" must be "defined with reference to the plaintiff's facial entitlement to benefits." *Id.*

This Court holds that Plaintiff cannot access Defendant's services in the future without aid of an ASL interpreter, and that Defendant currently "refuses to hire qualified sign language interpreters as a matter of policy and practice." Compl. ¶¶ 27-28. This "is sufficient to justify relief." *Henrietta D.*, 331 F.3d at 282.

The next question is the nature of that injunctive relief. The Court concludes that the injunctive relief sought here is appropriate. Accordingly, the Court hereby enters an injunction ordering that Defendant:

i.  develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

ii. develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

iii. develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Rehabilitation Act, ACA, NYHRL, and NYCHRL.

### B. Monetary Damages

Plaintiff seeks monetary damages for violations of the RA, ACA, NYHRL, and NYCHRL.

Monetary damages are available for violations of the RA "only upon a showing of an *intentional* violation." *Loeffler*, 582 F.3d at 275 (citation omitted). The standard for international violations is "deliberate indifference to the strong likelihood [of] a violation." *Id.* (citation and internal quotation marks omitted). Intent in this context thus does "does not require

personal animosity or ill will," but rather "may be inferred when a policy maker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result" from the action. *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff has pled deliberate indifference. Plaintiff has plausibly alleged that multiple representatives from Defendant were aware of Plaintiff's disability and request for an ASL interpreter yet refused to provide this accommodation. This "indifference to [Plaintiff's] rights may have been so pervasive as to amount to a choice." *Id.* at 276-77 (deliberate indifference where hospital denied patient access to ASL interpreter because "persons at the Hospital had actual knowledge of discrimination against [the plaintiffs], had authority to correct the discrimination, and failed to respond adequately."); *cf. Viera*, 2017 WL 3130332, at *15 (no deliberate indifference where Plaintiff *never requested* an ASL interpreter).

Accordingly, Plaintiff is entitled to monetary damages for violations of the RA. Because the ACA adopts the RA's enforcement mechanisms, she is likewise entitled to damages for violations of the ACA. Finally, NYHRL and NYCHRL also allow for monetary damages. *See Manswell v. Heavenly Miracle Academy Serv's, Inc.*, No. 14-cv-7114, 2017 WL 4075180, at *2 (E.D.N.Y. Sept. 14, 2017).

### C. Attorney's Fees

The ADA, 42 U.S.C. § 12205, Rehabilitation Act, 29 U.S.C. § 794a(b), ACA, 42 U.S.C. § 18116(a), and NYCHRL, N.Y.C. Admin. Code § 8–502(g), permit a court, in its discretion, to award attorney's fees to a prevailing party. As Plaintiff has prevailed here, she will be awarded attorney's fees.

Accordingly, Plaintiff's motion for a default judgment is GRANTED. The Court refers this matter to Magistrate Judge Debra C. Freeman for a damages inquest.

**SO ORDERED.**

**Dated:** August 28, 2018

      **New York, New York**

                                            **HON. ANDREW L. CARTER, JR.**
                                                **United States District Judge**